IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHYANDREA HESTER and MARY HESTER, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO.: CV-06-572-WHA |
| LOWNDES COUNTY COMMISSION, CHRISTOPHER BROWN, EMERGYSTAT, DEPUTY JIMMY HARRIS, et al., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## AFFIDAVIT

**STATE OF ALABAMA** )
)
**COUNTY OF BALDWIN** )

Before me, a Notary Public in and for said county and state, personally appeared **Christopher Brown,** who being first duly sworn, deposes and says that he is a citizen of the United States of America, and a resident of Baldwin County, Alabama;

Deponent further deposes and says, as follows:

1. My name is Christopher Brown. I am an Emergency Medical Technician/Paramedic ("EMT/P") who is currently licensed by the Alabama Department of Public Health and was practicing as such on May 28, 2004. I received my license to practice as an EMT in the State of Georgia in 1992, as a Paramedic in the State of Georgia in 1995, and as an EMT/P in the State of Alabama in 1996, and have kept my license current since that time. I am over the age of nineteen (19) years. I have personal knowledge of the facts contained in this Affidavit.

2. I am familiar with patient care provided by an emergency medical technician/paramedic. I recognized and followed the standard of care for an emergency medical technician/paramedic at all times pertinent to the claims being brought by Shyandrea Hester and Mary Hester while employed as an EMT/P for Emergystat, Inc.

3. At no time on May 28, 2004, did I assault, batter, or falsely imprison Shyandrea Hester. Further, at no time on May 28, 2004, did I assault, batter, or falsely imprison Mary Hester.

4. At no time on May 28, 2004, did I perform an unwanted invasive procedure on Shyandrea Hester, prevent Shyandrea Hester from leaving the ambulance or physically force Mary Hester to leave the ambulance.

5. Shyandrea Hester, who was of majority age, had consented to treatment provided by myself while en route to the hospital. She signed the Release of Treatment and Transport after being informed of the risks involved and released Emergystat, Inc. and EMT Brown from any responsibility which could result from this action. Since Shyandrea Hester had been in a motor vehicle accident and was complaining of head pain, dizziness and nausea, I followed precautionary guidelines for a head injury and suspected spinal injury. Shyandrea Hester was trauma-packaged by my partner and me. I then affirmed that Shyandrea Hester had a patent airway. I checked Shyandrea Hester's oxygen saturation with a pulse oximeter finding it stable. I checked her vital signs finding them stable. I then provided Shyandrea Hester with three liters of oxygen through a nasal cannula per accepted trauma treatment. I attempted to secure an IV line in Shyandrea Hester to provide a normal saline solution at a keep vein open rate. When I attempted to start an IV line in Shyandrea Hester, she jerked her arm away before I could secure

the IV line to a vein. I explained to Shyandrea Hester the need to start an IV line as part of her emergent care.

6.      Following, my first attempt to start an IV line in Shyandrea Hester, Mary Hester who was riding in the front of the ambulance, turned around in the front seat and told me to stop attempting to insert an IV line. She continued to yell at me to not attempt an IV line. She then removed her seatbelt and placed her head inside the ambulance's breezeway causing a safety risk to herself, the driver and her daughter. I asked her to stop interfering with her daughter's care or she would have to leave the ambulance for everyone's safety. Following, Mary Hester's failure to comply with my requests, I asked the ambulance driver to turn off the ambulance siren and lights and pull over. I called and requested assistance from the Lowndes County Sheriff's Department. The Lowndes County Deputy arrived on the scene and asked Mary Hester to step out of the ambulance. Initially, Mary Hester would not leave the ambulance. She began to yell at Shyandrea Hester to leave the ambulance. Shyandrea Hester then said she wanted to leave the ambulance. I told Shyandrea Hester that it was her decision to leave the ambulance, but she needed to be informed of the risks of not receiving care. Following my explaining to Shyandrea Hester the risks she would be taking in abandoning treatment, Shyandrea Hester then told her mother to leave the ambulance and that she would be fine. Mary Hester then left the ambulance and we proceeded to Baptist South Hospital Emergency Room.

7.      At no time, did I offer to touch or in fact touch Shyandrea Hester in a rude, angry or offensive manner. Furthermore, at no time did I intend to create in Shyandrea Hester's mind a fear of an imminent battery. Furthermore, all of my care provided to Shyandrea Hester was provided within the standard of care of an emergency medical technician/paramedic.

- 3 -

Further the affiant saith not.

*[signature]*
Christopher Brown

Sworn to and subscribed to before me this ____1____ day of __March__, 2007.

*[signature]*
Notary Public

My Commission Expires:

MY COMMISSION EXPIRES JULY 3, 2010

- 4 -